**SO ORDERED: September 30, 2014.**



**James M. Carr**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| HERBERT DEAN ELLETT, III and | ) Case No. 13-06304-JMC-7 |
| TONA MARIE ELLETT, | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |

## ORDER GRANTING AMENDED MOTION TO HOLD CREDITOR FRANCISCAN ALLIANCE, INC. IN CONTEMPT FOR VIOLATION OF U.S. BANKRUPTCY LAWS

THIS MATTER comes before the Court on the Amended Motion To Hold Creditor

Franciscan Alliance, Inc. In Contempt For Violation Of U.S. Bankruptcy Laws filed by Tona

Ellett ("Tona")[1] on December 13, 2013 (Docket No. 28) (the "Motion") and Franciscan Alliance,

Inc.'s Verified Response To Debtors' Amended Motion To Hold Creditor Franciscan Alliance,

Inc. In Contempt For Violation Of U.S. Bankruptcy Laws filed by Franciscan Alliance, Inc.

---

[1] At the Hearing, it was clarified that Herbert Ellett ("Herbert") and Tona are the account debtors with respect to services provided by Franciscan. Thus, the Court deems the Motion to have been filed by Tona and Herbert (collectively, the "Debtors").

("Franciscan") on February 12, 2014 (Docket No. 50) (the "Response"). The Court, having

reviewed the Motion, the Response, Debtor's Trial Brief filed by Debtors on May 15, 2014

(Docket No. 75), Debtors' Brief On The Issue Of Attorneys' Fees filed on June 5, 2014 (Docket

No. 80), and Franciscan Alliance, Inc.'s Post-Trial Brief filed on June 6, 2014 (Docket No. 82)

(the "Post-Trial Brief"); having considered the evidence admitted and the arguments of counsel

made at a hearing on May 22, 2014 (the "Hearing"); and being otherwise duly advised, now

**GRANTS** the Motion.

Jurisdiction and Venue

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and

1334, and the General Order of Reference issued by the United States District Court for the

Southern District of Indiana on July 11, 1984. Venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.

Findings of Fact

The Court makes the following findings of fact:

*Bankruptcy Case*

1.      On June 13, 2013 (the "Petition Date"), Debtors filed a voluntary petition under

Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy

Code"),[2] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis

Division.

2.      On June 14, 2013, the Clerk issued a "Notice of Chapter 7 Bankruptcy Case,

Meeting of Creditors and Deadlines" (the "Notice"). (Docket No. 10.) The Notice was sent to

"Franciscan Aliance" at PO Box 660383, Indianapolis, Indiana 46266-0383 and to "St. Francis

Medical Group" at 5224 South East Street, #3, Indianapolis, Indiana 46227-1985 and PO Box

---

[2]      All statutory references herein are to the Bankruptcy Code unless otherwise noted.

664056, Indianapolis, Indiana 46266-4056 by first class mail on June 16, 2013, according to the Certificate of Notice filed by the Bankruptcy Noticing Center.  (Docket No. 11; Ex. 1.)

3.     On October 1, 2013, Debtors received their general discharge.  (Docket No. 16; Ex. 2.)  The "Discharge of Debtors in a Chapter 7 Case" was sent to Franciscan at the same addresses referenced in paragraph 2 above by first class mail on October 3, 2013, according to the Certificate of Notice filed by the Bankruptcy Noticing Center.  (Docket No. 18.)

4.     On October 1, 2013, Debtors' bankruptcy case was closed.  (Docket No. 17.)

5.     On November 21, 2013, Debtors moved to reopen their case so they could pursue stay/discharge violations against certain creditors.  (Docket No. 20.)  That motion was granted, and on November 25, 2013, the bankruptcy case was reopened.  (Docket No. 22.)

*Medical Services/Statements of Account*

6.     On April 23, 2013, Herbert received medical services from Franciscan. Franciscan's CBO (as defined below) sent two Statements of Account to Herbert dated July 12, 2013 with respect to charges for these services.  (Exs. 10 and 11.)

7.     From February 28, 2013 through March 4, 2013, Tona received medical services from Franciscan.  Franciscan's CBO (as defined below) sent a Statement of Account to Tona dated July 30, 2013 with respect to charges for these services.  (Ex. 12.)

8.     On May 10, 2013, Tona received medical services from Franciscan.  Franciscan's ABO (as defined below) sent a Statement of Account to Tona dated July 30, 2013 with respect to charges for these services.[3]  (Ex. FF.)

9.     Debtors scheduled two debts to Franciscan Alliance, one for $4,882 and one for

---

[3]     Franciscan's ABO (as defined below) also sent a Final Notice (Ex. 14) to Tona dated October 28, 2013 with the same account number as, but in a different amount than, the July 30, 2013 Statement of Account.  Based on Tona's testimony, it appears the Final Notice referenced post-petition medical services provided by Franciscan. Counsel stipulated during the Hearing that such Final Notice does not constitute a violation of the automatic stay or the discharge injunction.

an unknown amount.  (Schedule F, Docket No. 1.)  Debtors scheduled three debts to St. Francis

Medical Group under, presumably, their collection agents, American Financial Credit in the

amount of $148, and MiraMed Revenue Group, one for $3,746 and one for an unknown amount.

10.     Debtors' counsel, John T. Steinkamp ("Counsel"), sent a letter dated July 26,

2013 (the "Demand Letter") to Franciscan (a) advising it that the automatic stay that arose when

Debtors filed their bankruptcy case prohibits any and all collection activities, and (b) demanding

that Franciscan cease all collection activities.  (Ex. 13.)

11.     Herbert testified that he felt stress about having received the statements, but he

incurred no expenses related to such stress.  His out-of-pocket expenses include fuel costs of

approximately $100.  He further estimates that he has spent 14-15 hours away from work

($25/hour) dealing with this matter, though he was not working in the 2-3 weeks leading up to

the Hearing.[4]

12.     Tona testified that she felt stress about having received the statements, but she

incurred no expenses related to such stress.  Her out-of-pocket expenses include fuel costs of

approximately $50-$100.  She further estimates that she has spent approximately 10 hours away

from work ($13/hour) dealing with this matter.[5]

13.     Debtors also incurred attorneys' fees in pursuing the Motion.  Counsel submitted

an affidavit for attorneys' fees and expenses in the amount of $2,642.50 through May 18, 2014.

(Ex. 17.)  It does not include time spent preparing for or participating in the Hearing, nor for time

spent on post-Hearing briefing.

---

[4]     At the Hearing, three contempt motions came before the Court, two of which were brought by Herbert
(including the Motion).  The Court views Herbert's testimony regarding the out-of-pocket expenses he incurred as
collective, meaning that they are his total expenses for both motions, not just the Motion.

[5]     At the Hearing, three contempt motions came before the Court, two of which were brought by Tona
(including the Motion).  The Court views Tona's testimony regarding the out-of-pocket expenses she incurred as
collective, meaning that they are her total expenses for both motions, not just the Motion.

14.     Kelly Tomaszewski, Manager of Enterprise Management at Franciscan's Coordinated Business Office ("CBO"), and/or Nancy Rizzi, Customer Service Manager at Franciscan's Ambulatory Business Office ("ABO"), testified at the Hearing that:

a.      The CBO and the ABO have separate offices and locations.  They use the same accounting software (Epic), but other than demographic and insurance information, the CBO's and ABO's billing systems do not share information.  Two of the three addresses to which the Notice and Discharge were sent are ABO addresses.  The third is an older address for the ABO.

b.      The CBO is responsible for billing for the hospital.  It uses a "letter vendor" to send its statements.  Statements are prepared a few days before the statement date.

c.      The CBO received notice of Debtors' bankruptcy filing from the Demand Letter on July 28 or 29, 2013.  The CBO wrote off all balances on July 30, 2013.

d.      By the time the CBO got the Demand Letter, its July 30, 2013 statement for Tona was already "queued and gone" to the letter vendor.  The Demand Letter was not received in time to stop that statement from going out.

e.      The ABO is responsible for billing for the physician network.

f.      The ABO got notice of Debtors' bankruptcy filing from the Notice sent to its lockbox on June 21, 2013.  The ABO wrote off all self-pay balances on June 25, 2013.  The ABO did not immediately write off the entire balance because the insurance claim with respect thereto was still in process.  Such insurance claim was ultimately denied because the insurance company issued a check to Tona, rather than to Franciscan, for such claim.

g.      The ABO and CBO now have a manual process for sharing bankruptcy information between the two offices.  This process was not implemented at the times relevant to this matter.

15.      No further collection activity occurred after Franciscan sent the July 30, 2013 statements.

## Conclusions of Law

The Court makes the following conclusions of law:

16.      Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the decision of the Court.

17.      Preliminarily, the Court will address the CBO-ABO distinction, as much attention was paid to this at the Hearing and in the Post-Trial Brief.  Franciscan argues in its Post-Trial Brief that the CBO (referred to as Franciscan St. Francis) and the ABO (referred to as Franciscan Alliance) are two separate entities with two separate office locations and two separate billing systems.  (Post-Trial Brief, p. 1 and p. 5, n.2.)  Ms. Tomaszewski and Ms. Rizzi testified as to the separateness of the CBO's and ABO's work.  However, there was no evidence submitted nor argument of counsel regarding the *legal* separateness of the CBO and ABO.  As such, the record shows no legal basis upon which to treat them separately for purposes of evaluating whether the statements they sent violated the automatic stay.  Thus, all statements will be considered to have been sent by Franciscan, regardless of which of its billing offices issued the statement.

*Violation of the Automatic Stay:  11 U.S.C. § 362(k)*

18.      Debtors allege that each statement represents a violation of the automatic stay.[6] The Court agrees.

---

[6]      While the Motion alleges violations of both the automatic stay and the discharge injunction, the statements in question were sent between the Petition Date and the date Debtors' received their discharge.  Therefore, the Court will only address whether sending the statements violate the automatic stay.

19.    The relevant portion of § 362(d) provides:

(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

To succeed on their § 362(k) claim, Debtors have the burden of establishing the following elements by a preponderance of the evidence:

(1) a bankruptcy petition was filed; (2) the aggrieved debtor is an "individual"; (3) the creditor had notice of the petition; (4) the creditor's actions were willful and violated the stay; and (5) the debtor is entitled to a form of relief provided by § 362(k).

Ralph v. Forum Credit Union (In re Ralph), 2010 WL 2594947 at *3 (Bankr. S.D. Ind. 2010) (citing Galmore v. Dykstra (In re Galmore), 390 B.R. 901, 907 (Bankr. N.D. Ind. 2008)). "For the violation to be 'willful', the creditor need only intend to commit the act that led to the violation; the debtor need not prove that the creditor specifically intended to violate the stay." Id. (citing Galmore, 390 B.R. at 907; Kline v. Tiedemann (In re Kline), 424 B.R. 516, 524 (Bankr. D. N.M. 2010)).

20.    The first and second elements are uncontested.

21.    Franciscan contests the third element, particularly as to the statements sent by the CBO. (Post-Trial Brief, pp. 4-6.) However, the Court concludes that the third element is satisfied by the evidence that Franciscan received the Notice on June 21, 2013, which was before Franciscan sent any of the statements in question. The fact that such information was not shared by the ABO with the CBO does not change the conclusion that Franciscan had notice of Debtors' bankruptcy case as of the earliest date one of its billing offices received the Notice.

22.    Franciscan also contests the fourth element, arguing that the ABO's sending the statement was not a willful act because an insurance claim was pending with respect thereto.

(Post-Trial Brief, p. 6.)  The Court disagrees.  There is no dispute that the statements were sent by Franciscan's automated systems.  Franciscan may not have intended to violate the automatic stay, but it did "intend to commit the act that led to the violation" (as described in Ralph) by causing the statements to be sent to Debtors.  As to Franciscan's specific argument as to statements sent by the ABO, the evidence showed that the ABO wrote off Debtors' self-pay balances on June 25, 2013 because it received the Notice.  However, Ms. Rizzi testified that it did not write off the entire balance because of a pending insurance claim.  The result of that decision was Franciscan's ABO sending the July 30, 2013 statement with knowledge of the automatic stay.  Based on these facts, the Court concludes that Franciscan's actions were willful under the standard described in ¶ 18 above.

23.    The Court concludes that the fifth element is satisfied.  Herbert's testimony as to his out-of-pocket expenses and lost wages was questioned by Franciscan, but controverting evidence was not presented.  Therefore, the Court awards Herbert actual damages in the amount of $225.[7]  Tona's testimony as to her out-of-pocket expenses and lost wages was also questioned, but controverting evidence was not presented.  Therefore, the Court awards Tona actual damages in the amount of $90.[8]

24.    The Court will also award reasonable attorneys' fees to Debtors.  Viewing the totality of the evidence, including the total amount of the debt, the number and dates of the violations of the automatic stay, the circumstances under which the statements were sent, that Franciscan's last statements were sent on July 30, 2013 which was more than four months before the Motion was filed, the effectiveness of the Demand Letter in getting the CBO to stop sending statements, and Counsel's fee affidavit, the Court concludes that reasonable attorneys' fees for

---

[7]    This amount is calculated by adding $350 for missed work time and $100 for gasoline and dividing it by 2.

[8]    This amount is calculated by adding $130 for missed work time and $50 for gasoline and dividing it by 2.

this matter are $250.  Therefore, the Court awards Debtors attorneys' fees in the amount of $250 and expenses in the amount of $1.

*Decision*

Based on the foregoing, the Court hereby GRANTS the Motion.

Pursuant to 11 U.S.C. § 362(k)(1), the Court awards to Debtors $566 in actual damages, consisting of $225 in out-of-pocket expenses and lost wages for Herbert, $90 in out-of-pocket expenses and lost wages for Tona, attorneys' fees in the amount of $250, and expenses in the amount of $1.

The Court does not award punitive damages to Debtors.

Franciscan shall pay the total award of $566 to Debtors by October 31, 2014.

IT IS SO ORDERED.

# # #