**SO ORDERED: September 30, 2014.**



**James M. Carr
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HERBERT DEAN ELLETT, III and | ) | Case No. 13-06304-JMC-7 |
| TONA MARIE ELLETT, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**ORDER GRANTING AMENDED MOTION TO HOLD CREDITOR
MID AMERICA PATHOLOGY SERVICES IN CONTEMPT
FOR VIOLATION OF U.S. BANKRUPTCY LAWS**

THIS MATTER comes before the Court on the Amended Motion To Hold Creditor Mid

America Pathology Services In Contempt For Violation Of U.S. Bankruptcy Laws filed by Tona

Ellett ("Tona") on December 13, 2013 (Docket No. 29) (the "Motion") and the Response In

Opposition To Amended Motion To Hold Creditor Mid America Pathology Services In

Contempt For Violation Of U.S. Bankruptcy Laws filed by Mid America Pathology Services

("Mid America") on February 13, 2014 (Docket No. 51) (the "Response").  The Court, having

reviewed the Motion, the Response, Debtor's Trial Brief filed by Tona and Herbert Ellett

(collectively, the "Debtors") on May 15, 2014 (Docket No. 75), the Trial Brief filed by Mid America on May 19, 2014 (Docket No. 76) (the "Trial Brief"), Debtors' Brief On The Issue Of Attorneys' Fees filed on June 5, 2014 (Docket No. 80), and the Supplemental Trial Brief filed by Mid America on June 6, 2014 (Docket No. 81) (the "Supplemental Brief"); having considered the evidence admitted and the arguments of counsel made at a hearing on May 22, 2014 (the "Hearing"); and being otherwise duly advised, now **GRANTS** the Motion.

Jurisdiction and Venue

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334, and the General Order of Reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

Findings of Fact

The Court makes the following findings of fact:

*Bankruptcy Case*

1.      On June 13, 2013, Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

2.      On June 14, 2013, the Clerk issued a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" (the "Notice").  (Docket No. 10.)   The Notice was sent to Mid America at 3755 East 82nd Street, Suite 75A, Indianapolis, IN 46240-7335 by first class mail on June 16, 2013, according to the Certificate of Notice filed by the Bankruptcy Noticing Center. (Docket No. 11; Ex. 1.)

---

[1]      All statutory references herein are to the Bankruptcy Code unless otherwise noted.

3.      On October 1, 2013, Debtors received their general discharge.  (Docket No. 16; Ex. 2.)  The "Discharge of Debtors in a Chapter 7 Case" (the "Discharge") was sent to Mid America at the same address by first class mail on October 3, 2013, according to the Certificate of Notice filed by the Bankruptcy Noticing Center.  (Docket No. 18.)

4.      On October 1, 2013, Debtors' bankruptcy case was closed.  (Docket No. 17.)

5.      On November 21, 2013, Debtors moved to reopen their case so they could pursue stay/discharge violations against certain creditors.  (Docket No. 20.)  That motion was granted, and on November 25, 2013, the bankruptcy case was reopened.  (Docket No. 22.)

*Medical Services/Billing Statements*

6.      On February 22, 2013, Tona met with two medical care providers, Ryan K. Brashear, M.D. and Janelle M. Reklau, P.A.  (Ex. 4; Ex. AAA, ¶ 9.)

7.      Mid America sent billing statements dated June 24, 2013, July 29, 2013, September 5, 2013 and October 10, 2013 to Tona, each in the amount of $19.35, for the services Dr. Brashear provided.  (Ex. 4.)  This debt was scheduled by Debtors.  (Schedule F, Docket No. 1.)

8.      Dermatology, Inc.[2] sent billing statements dated June 24, 2013, July 29, 2013 and September 5, 2013 to Tona, each in the amount of $30.01, for the services Ms. Reklau provided.  (Ex. 4.)  This debt was not separately scheduled by Debtors.

9.      Debtors' counsel, John T. Steinkamp ("Counsel"), sent a letter dated August 26, 2013 (the "Demand Letter") to Mid America (a) advising it that the automatic stay that arose

---

[2]      The Court accepts the explanation of Mid America's counsel that Dermatology, Inc. is the legal name of the business entity that also does business as Mid America Pathology Services.  Apparently, they are distinguished by the medical services they provide, as reflected in their respective names.  Counsel for both Tona and Mid America agreed at the Hearing that the claim is being asserted against Dermatology, Inc.; however, for consistency with the prior-filed pleadings, the Court will generally refer to the respondent as Mid America unless it is necessary to distinguish between the billing statements issued under the two different names.

when Debtors filed their bankruptcy case prohibits any and all collection activities, and

(b) demanding that Mid America cease all collection activities.  (Ex. 3.)

10.    Tona testified that she felt stress about having received the billing statements, but she incurred no expenses related to such stress.  She also testified that she tried to pay the debt but was told that she could not.[3]  Her out-of-pocket expenses include fuel costs of approximately $50-$100.  She further estimates that she spent approximately 10 hours away from work, at which she earned $13/hour, dealing with this matter.[4]

11.    Tona incurred attorneys' fees associated with pursuing the Motion.  Counsel submitted an affidavit for attorneys' fees and expenses in the amount of $2,880 through May 18, 2014.  (Ex. 5.)  It does not include time spent preparing for or participating in the Hearing, nor for time spent on post-Hearing briefing.

12.    Amy Summers, Mid America's practice administrator, testified both at the Hearing and in a declaration that was admitted into evidence at the Hearing, that:

a.    Debra O'Daniel, the employee who served as Mid America's collections representative beginning in 2012, was responsible for sending out billing statements, receiving bankruptcy information and notices, handling accounts subject to bankruptcy, and writing off accounts after a bankruptcy case was filed.  (Ex. AAA, ¶ 6.)

b.    Ms. O'Daniel caused Mid America's NextGen computer system to send out the June 24, 2013 and July 29, 2013 billing statements (from both Mid America and Dermatology, Inc.) to Tona.  (Ex. AAA, ¶ 10 and Exs. A and B thereto.)

---

[3]    In the Trial Brief, Mid America disclosed that Tona voluntarily paid $30.01 to Dermatology, Inc. on October 2, 2013, and that Mid America returned such payment on February 21, 2014.  (Trial Brief, pp. 3-4, n.2.)

[4]    At the Hearing, three contempt motions came before the Court, two of which were brought by Tona (including the Motion).  The Court views Tona's testimony regarding the out-of-pocket expenses she incurred as collective, meaning that they are her total expenses for both motions, not just the Motion.

     c.      By the summer of 2013, Ms. O'Daniel was behind on her responsibilities and was not working as diligently as her job duties required.  Paperwork directed to Ms. O'Daniel accumulated on her desk and was not addressed in a manner consistent with Ms. O'Daniel's job responsibilities.  (Ex. AAA, ¶ 11.)

     d.      On August 2, 2013, Ms. O'Daniel resigned.  Mid America hired Brittney Owens to replace Ms. O'Daniel.  Ms. Owens caused the Next Gen computer system to send out the September 5, 2013 and October 10, 2013 billing statements (from both Mid America and Dermatology, Inc.) to Tona.  (Ex. AAA, ¶¶ 12, 13 and Exs. C and D thereto.)

     e.      While Ms. Owens was being trained, other Mid America employees assisted in clearing and processing the accumulated paperwork from Ms. O'Daniel's desk.  During that process, the Notice, the Demand Letter and the Discharge were discovered.  On October 16, 2013, Patricia Charles, a Mid America employee, coded Debtor's account with Mid America as a "Bankruptcy Write Off."  (Ex. AAA, ¶ 14.)

13.     No further collection activity occurred after October 16, 2013.  (Ex. AAA, ¶ 15.)

14.     Mid America's procedure for handling bankruptcy notices at the relevant time was for notices to have been given to Ms. O'Daniel, and she would then mark that account in the computer system so further billing statements would not be sent out.  The procedure was followed to the extent the Notice, Demand Letter and Discharge were given to Ms. O'Daniel; it was not followed to the extent that Ms. O'Daniel did not mark Tona's accounts in the computer system accordingly.

15.     As a result of the allegations contained in the Motion, Mid America reassigned the responsibility of receiving and coding bankruptcy notices from the collections representative

to a different employee with specific bankruptcy experience.  (Ex. AAA, ¶ 17.)

16.     On January 9, 2014, Mid America made a settlement offer of $500.  (Ex. DDD.)

17.     On January 28, 2014, Mid America made a settlement offer of $2,000.  (Ex. EEE.)

Conclusions of Law

The Court makes the following conclusions of law:

18.     Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the decision of the Court.

19.     Preliminarily, the Court will address the issue raised at the Hearing that the $30.01 billing statements sent by Dermatology, Inc. represented a separate, *unscheduled* debt and thus Tona is precluded from pursuing her contempt claim as to such billing statements.

20.     The Court concludes that such issue is not dispositive to Tona's argument.

    a.     Dermatology, Inc. is the legal entity to which the Notice, the Demand Letter and the Discharge were sent, notwithstanding the fact that those documents were addressed to its "doing business as" name.  There is no issue as to Dermatology, Inc.'s knowledge of this bankruptcy case.

    b.     Both the $30.01 and $19.35 billing statements are owed to the same legal entity, Dermatology, Inc.

    c.     Dermatology, Inc. had one employee (Ms. O'Daniel or Ms. Owens, depending on the date) causing its Next Gen computer system to send billing statements under both of its names.

Based on these facts, Tona may pursue her contempt claim as to the billing statements sent to her under both the Dermatology, Inc. and Mid America names.

*Violation of the Automatic Stay and Discharge Injunction*

21.    Tona alleges that each billing statement represents a violation of the automatic

stay or the discharge injunction.  The Court agrees.

22.    The relevant portion of § 362(k) provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful
> violation of a stay provided by this section shall recover actual damages,
> including costs and attorneys' fees, and, in appropriate circumstances, may
> recover punitive damages.

To succeed on her § 362(k) claim, Tona has the burden of establishing the following

elements by a preponderance of the evidence:

> (1) a bankruptcy petition was filed; (2) the aggrieved debtor is an "individual";
> (3) the creditor had notice of the petition; (4) the creditor's actions were willful
> and violated the stay; and (5) the debtor is entitled to a form of relief provided by
> § 362(k).

Ralph v. Forum Credit Union (In re Ralph), 2010 WL 2594947 at *3 (Bankr. S.D. Ind.

2010) (citing Galmore v. Dykstra (In re Galmore), 390 B.R. 901, 907 (Bankr. N.D. Ind.

2008)).  "For the violation to be 'willful', the creditor need only intend to commit the act

that led to the violation; the debtor need not prove that the creditor specifically intended

to violate the stay."  Id. (citing Galmore, 390 B.R. at 907; Kline v. Tiedemann (In re

Kline), 424 B.R. 516, 524 (Bankr. D. N.M. 2010)).

23.    The relevant portion of § 524 provides:

> (a)  A discharge in a case under this title –
>     (2)  operates as an injunction against the commencement or continuation
>     of an action, the employment of process, or an act, to collect, recover or
>     offset any such debt as a personal liability of the debtor, whether or not
>     discharge of such debt is waived … .

To succeed in asserting a violation of the discharge injunction,

> [t]he debtor bears the burden of proof on a motion to enforce discharge injunction
> and must prove the violation by clear and convincing evidence.  …  In order to

meet his burden, the debtor must first prove that the subject debt was discharged
… . Next, the creditor may be held in contempt if it (1) had knowledge of the
post-discharge injunction; and (2) intended the actions which violated the
injunction.

In re Turner, 2009 WL 3013615 at *3 (Bankr. S.D. Ind. 2009) (internal citations omitted).

24.     A detailed description and analysis of each element of the § 362(k) and § 524

claims are not necessary because "Mid America concedes that the only issue before this Court is

the amount of damages to which [Tona] is entitled under Sections 362 and 542 [sic] of the

Bankruptcy Code."  (Trial Brief, p. 4.)  Thus, the Court will focus on what damages it should

award Tona based on Mid America's violations.

*Damages*

25.     Tona's testimony as to her out-of-pocket expenses and lost wages was not

disputed.  Therefore, the Court awards Tona actual damages in the amount of $90.[5]

26.     The main dispute between the parties on the issue of damages pertains to Tona's

attorneys' fees.  The first issue was whether attorneys' fees should be computed using the

lodestar method when Tona had a contingent-fee arrangement with Counsel.  In the

Supplemental Brief, citing Seventh Circuit and other authority, Mid America conceded that it

"does not dispute that [Tona] is entitled to recover reasonable attorneys' fees in this case despite

the execution of the Contingent Fee Agreement."  (Supplemental Brief, p. 3.)  The question then

becomes what reasonable attorneys' fees are.

27.     Mid America has two principal arguments against awarding the fees sought in

Counsel's affidavit (plus fees for preparation for and participation in the Hearing and post-

Hearing briefing):  (a) because Mid America made a reasonable settlement offer, Tona should

have mitigated her damages rather than pursue unduly burdensome discovery and a hearing – she

---

[5]     This amount is calculated by adding $130 for missed work time and $50 for gasoline and dividing it by 2.

is not entitled to attorneys' fees after the date of the settlement offer because they were not reasonable, necessary or beneficial to the resolution of the Motion (Supplemental Brief, pp. 2-3); and (b) the amount of attorneys' fees requested does not bear a reasonable relationship to the amount in controversy (less than $50).  (Supplemental Brief, p. 3.)  Mid America principally relies on <u>Harris v. Memorial Hospital (In re Harris)</u>, 374 B.R. 611 (Bankr. N.D. Ohio 2007).

28.     Viewing the totality of the evidence, including the total amount of the debt, the number and dates of the violations of the automatic stay and/or discharge injunction, the circumstances under which the billing statements were sent, the date Mid America's collection activities stopped vis-à-vis the date the Notice was sent, and Counsel's fee affidavit, particularly in light of the January 28, 2014 settlement offer made by Mid America, the Court concludes that reasonable attorneys' fees for this matter are $1,500.  Therefore, the Court awards Tona attorneys' fees in the amount of $1,500 and expenses in the amount of $20.

29.     Punitive damages are not appropriate under these circumstances, and the Court declines to award them.

<u>Decision</u>

Based on the foregoing, the Court hereby GRANTS the Motion.

The Court awards to Tona $1,610 in actual damages, consisting of $90 for out-of-pocket expenses and lost wages, $1,500 in attorneys' fees and $20 expenses.

The Court does not award punitive damages to Tona.

Mid America shall pay the total award of $1,610 to Tona by October 31, 2014.

IT IS SO ORDERED.

# # #